## VINTO PRODUCTS CO. v. GODDARD, U. S. Com'r, et al.

District Court, D. Minnesota, Third Division. Sept. 11, 1930.

Brill & Maslon, of Minneapolis, Minn., for plaintiff.

L. L. Drill, U. S. Atty., and Robert V. Rensch, Asst. U. S. Atty., both of St. Paul, Minn., for defendants.

SANBORN, District Judge.

Under the search warrant, the validity of which is attacked, the defendants, or some of them, have come into possession of the stock of goods formerly possessed by the plaintiff. The goods consist generally of those which may be found in any store whose business is that of supplying the requirements of the manufacturers of beer or other intoxicating liquors.

The search warrant is attacked on three grounds:

(1) That the description of the premises to be searched is too broad;

(2) That the description of the property to be seized is insufficient;

(3) That the facts stated in the affidavit upon which the search warrant was issued are insufficient to justify a finding of probable cause by the Commissioner.

The affidavit describes the premises as, "the place known as 'Vinto Products Company,' located in the one-story brick build-ing at number 281 East 7th Street, in the City of St. Paul, County of Ramsey, in said State (Minnesota)."

The search warrant refers to the premises to be searched as, "the malt store known as the 'Vinto Products Company,' located in the one story brick building at number 281 East Seventh Street, in the City of St. Paul, in the County of Ramsey, and State of Minnesota, and all appurtenances to said malt store used in connection therewith, being the only malt store so described and so located."

Under the authority of Gerahty v. United States (C. C. A.) 29 F.(2d) 8, and Steele v. United States, 267 U. S. 505, 45 S. Ct. 417, 69 L. Ed. 761, the description in the warrant is not too broad. It is true that the exact point was not discussed in the Steele Case, but the sufficiency of the warrant was in issue, and the fact that the description of the property was broader in the warrant than it was in the affidavit was obvious. I think it may properly be assumed that the Supreme Court would not overlook such a defect.

For other cases in which the descriptions in search warrants were apparently broader than descriptions in the underlying affidavits, see Baker v. United States (C. C. A.) 4 F.(2d) 805; Hogrefe v. United States (C. C. A.) 30 F.(2d) 640; Levee v. United States (C. C. A.) 29 F.(2d) 187; United States v. Yablonsky (D. C.) 8 F.(2d) 318.

Furthermore, there is no claim here that any search was made other than the search of the storeroom specifically described in the affidavit.

The description of the property which the officers were directed to seize is the "stock of goods, or utensils, instruments. materials, or property there kept in carrying on said violation." The affidavit, which is attached, and to which recourse may be had, states, generally, what the stock consists of, and the warrant applied for is one to search for and seize all of the stock, upon the claim of the government and its assertion of probable cause contained in the affidavit that all of it is being used for the purpose of violating the law. There could have been a more detailed description, but an officer reading it could reasonably understand that he was directed to do what was done in this case. See Petition of Barber (D. C.) 281 F. 550; U. S. v. Kaplan (D. C.) 16 F.(2d) 802.

My conclusion is that the warrant sufficiently describes the property to be seized.

As to the showing of probable cause, the affidavit of the agent states that he is familiar with the stock of goods kept for sale in this

place; that it consists of articles such as malt syrup or malt extract, flavored with hops, charred oak kegs and barrels, oak chips, bottles such as are used for containing beer or whisky, brandy, or gin, capping machines, corks, bottling machines, syphons, jugs, crocks, and vats. He details a visit to the store on the 16th day of May, 1930, when he purchased a five-gallon crock and a syphon hose, two cans of Home malt syrup containing hop extract, two cans of Budweiser malt syrup containing hop extract, two dozen quart bottles, one package of bottle caps, one capping machine, one filter, and two packages of clarifiers such as are used for clarifying beer. He refers to another visit on the 17th day of June, 1930, on which occasion he purchased some colored oak chips, some gin essence, and Bourbon flavoring. He sets out a conversation which he had with the person who waited on him with reference to the use of bead oil in moonshine whisky, with reference to the aging of moonshine whisky, and with reference to the length of time that charred barrels should be soaked before they were filled with moonshine whisky. He states that on the 8th day of July, 1930, he again visited the place and purchased a charred keg and a bottle of Bourbon extract; that the person with whom he dealt said that it was sufficient to flavor ten gallons of moonshine whisky; that he purchased a bottle of gin extract, which was stated to be sufficient for three gallons of gin, a package of oak chips which was said to be sufficient to "take care of" ten gallons of moon; that he was told to leave the chips in the moon a few hours, and was also told that if he left the moon in the kegs for any length of time, he would not need the chips. The search and seizure under the warrant was on the 16th day of July, 1930.

The question presented, then, is whether the facts and circumstances before the officer who issued the warrant were such as to justify a man of prudence and caution in believing that the National Prohibition Act (sections 18 and 25 of title 2 [27 USCA §§ 30, 39]) was being violated in the respects asserted by the government. Gerahty v. United States, supra; Carroll v. United States, 267 U. S. 132, 45 S. Ct. 280, 69 L. Ed. 543, 39 A. L. R. 790; Steele v. United States, supra.

To my mind, the facts and circumstances contained in the affidavit were sufficient. The affidavit seems to present a fairly good picture of the ordinary malt store or bootlegger's, moonshiner's, and home-brewer's supply house. Certainly, an individual of average intelligence, who passes such places and sees articles similar to those described in the search warrant displayed in the show window, has no doubt in his mind as to the purpose for which such goods are intended or as to the character of the place. While the proceedings underlying the search and seizure are not perfect and the criticisms made of them not without merit, my best judgment is that they are sufficient to support the seizure.

The motion of the plaintiff is denied, and the restraining order heretofore granted is discharged. Some reference is made to books and other documents not mentioned in the search warrant. At the argument, I did not understand that it was claimed that such papers were being held by virtue of the search warrant or that their return was requested. If I am mistaken as to this, the plaintiff may apply for an order requiring their separate return, if it be so advised.